No. 30,271.

ARTHUR INGRAM, *Appellee,* v. THE MIDLAND VALLEY RAILROAD COMPANY, *Appellant.*

(7 P. 2d 92.)

Opinion filed January 30, 1932.

*C. H. Brooks, Willard Brooks, Howard Fleeson,* all of Wichita, *O. E. Swan* and *Clayton M. Davis,* both of Muskogee, Okla., for the appellant.

*Benjamin H. Brown* and *William Keith,* both of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one under the federal employers' liability act, by a railroad employee, to recover damages for personal injury occasioned by his employer's negligence. Plaintiff recovered, and defendant appeals.

Plaintiff and Maloney, another employee, were directed by their foreman, Graham, to unload twenty-five 200-pound gunny sacks of soda ash from a car, and place the sacks in a shed in the yards of the railroad company in Wichita. The shed was used for storage of soda ash, with which water for engines is softened, and was already about two-thirds filled. The sacks in the shed were piled in tiers, and to reach back tiers the men walked on sacks of lower tiers. After half the sacks were unloaded and placed in the shed, and as plaintiff and his fellow employee swung a sack to place it on a tier, the sack on which plaintiff's foot was steadied seemed to slip, he fell, the sack fell on him, and he sustained an injury consisting of a sprained thigh muscle.

The petition pleaded negligence on the part of defendant in that plaintiff was not furnished a safe place in which to work. The specification was that the sacks already in the shed, on and over which

plaintiff was obliged to step in carrying heavy sacks of soda ash, furnished insecure footing because of space between sacks lying lengthwise. There were other specifications, not now important because of a finding of the jury. In describing the accident the petition alleged plaintiff was injured by movement or displacement of sacks beneath his feet. The petition did not allege plaintiff's foot slipped on sacks, or off of sacks, and did not attribute the injury to the existence of space between sacks.

The answer denied negligence, and pleaded assumption of risk. The general verdict of the jury was for plaintiff. With the general verdict the jury returned some special findings of fact. A motion was made for judgment for defendant on the special findings, but the motion was denied.

Plaintiff was a common laborer, thirty-eight years old, and of varied experience. He had worked for the railroad company "off and on" for seven years, and had been working for the company for about two months before the accident, servicing track. Immediately before that he had done sewer work, and in the course of his experience he had worked for five different construction companies. He said he had not previously unloaded and stored soda-ash sacks. It seems he understood something about handling soda ash, since he testified he put on a pair of overalls "because soda ash gets into your clothes, and as you begin to sweat it will burn you."

When Graham, the foreman, directed plaintiff and Maloney to unload the soda ash, Graham took plaintiff and Maloney to the door of the shed and showed them what to do. It was expected the soda-ash room would not hold all the sacks to be unloaded, and Graham told the workmen where to put the remainder. Graham testified he made no suggestions to the workmen about method of stacking the sacks, and did not watch them, as they were "old heads."

When taken to the door of the shed, plaintiff looked in and saw the space was about two-thirds full of 100-pound sacks, stacked lengthwise of the building, the top tier being about six sacks high. Then there was a lower tier, then another, and finally there were single sacks on the cement floor of the shed. Plaintiff did not examine the sacks, but just looked in and saw how they were piled.

Plaintiff gave dimensions of the shed and the soda-ash room, and said he did not see any window in the back end, or place for light, except the door. A diagram of the room was introduced in evidence, and there was no dispute that there was a double-sash window, four

lights to the sash, in the room. Except for plaintiff's statement that there was no light except from the doorway, the evidence was that the sacks were not piled high enough to cover the window, and there was space left for the window. However, plaintiff testified it was daylight in the room, and he gave no testimony that the light condition of the room in any way embarrassed him in observing conditions or in doing his work. While great ingenuity was exercised in the invention of grounds of negligence to go into the petition, as, for example, that the company did not furnish a house big enough to hold its soda ash, there was no specification that defendant was negligent because the shed was not adequately lighted. Plaintiff testified that in stacking the sacks it became "kind of dusty" in the shed on top of the piles, and the testimony for defendant was that this probably would occur. There was no complaint in the petition that doing the work created a condition rendering it difficult for plaintiff to see.

Plaintiff and Maloney set about unloading the car in workmanlike fashion. They procured boards about twenty feet long, reaching from the car door to the ground. They slipped or rolled the bags down the incline. Then each man took hold of an end of a bag, and they carried it to the shed. There was no dispute that to put the sacks in the rear of the soda-ash room it was necessary for the men to step on sacks already there. Plaintiff said he and Maloney made no new tiers.

Plaintiff testified there was nothing noticeably out of order, so far as he could see, and he and Maloney experienced no difficulty in depositing sacks before plaintiff was injured. When the accident occurred twelve of the sacks in the car had been unloaded and placed in the shed. Plaintiff did not know there was anything wrong with the footing, and he had no reason to believe there was anything wrong.

Plaintiff said the sack under his foot kind of slipped, and he fell. After the fall plaintiff noticed a space between the sacks which he slipped on, apparently three or four inches between the sacks. In response to leading questions by his counsel, plaintiff then said the space was the cause of his foot slipping. Plaintiff testified as follows:

"Q. Which way did your foot slip, towards the west, or towards the east? A. My foot creeled in to the west.

"Q. What do you mean by 'creeled'—I don't know that word? A. Just

something like this: If you have a foundation under your foot, and it slips back that way, then that will bring your foot in that kind of a position (indicating)."

Plaintiff gave no testimony that his fall was caused by stepping into a space, or by his foot slipping off of a sack into a space, and his case rested on the fact that the foundation under his foot, consisting of a 100-pound sack, lying either on the cement floor or on other sacks, moved, and moved because of the space.

There was testimony for defendant that some of the sacks already in the room were on end, but plaintiff said the sacks he walked on were lying down side by side. There was testimony for defendant that the 100-pound sacks already in the room were nearly round, that they would flatten some with other sacks on them, that sacks on end would settle some, and that the space on top of sacks would not be perfectly level. There was also testimony for defendant that soda ash hardens, that the sacks in the room were solid, and that they did not sink in when walked on. Plaintiff made no reference in his testimony to sinking in as he walked on sacks going to and from the places where he deposited some twelve sacks before he was injured.

The jury returned the following special findings of fact:

"1. Did the plaintiff on May 16, 1930, sustain an injury as alleged while stacking defendant's sacks of soda ash? A. Yes.

"2. If you answer question No. 1 in the affirmative, was the injury caused by any preëxisting defect in the manner in which the already stored soda ash was piled or stacked? A. Yes.

"3. If you answer No. 2 in the affirmative, what in detail was that defect? A. Provided insecure footing because of space left between the sacks over which they had to walk.

"4. Was said defect, if any, one which with reasonable care the plaintiff would have observed? A. No.

"5. Was the defect, if any, so dangerous that an employer in the exercise of ordinary care toward his employees, would not have permitted the defect to exist? A. No."

Notwithstanding these findings, the jury reached the conclusion expressed by the general verdict, that defendant was negligent. The conclusion was inconsistent with the findings.

It forces the evidence to say that unless sacks in a lower tier were laid against each other, and there existed a little space between two sacks, there was a defect in the place with respect to workmen who were later to put in more sacks. The work to be done was stacking bags of soda ash in a warehouse where other bags were stored. The

other bags had been brought in and stacked by workmen, as plaintiff and Maloney were doing, and micrometric precision was not required for the protection of workmen used to all the varieties of footing encountered in doing railroad track work. The third finding does not accurately reflect the evidence. Plaintiff was not injured while he was walking over sacks to a place to deposit the sack in hand. He said that as they made the swing to put the sack in hand on top, the sack which he had his foot steadied on slipped. There was no evidence that there was any space between sacks anywhere in the room, except the single space at the place of accident. These criticisms, however, may be left at one side, and findings 2 and 3 may be accepted as reflecting the physical situation disclosed by the evidence.

Finding No. 4 appraises the physical situation in terms of care on plaintiff's part. Plaintiff, in the exercise of reasonable care, would not have observed the space. Exercise of reasonable care required him to see what was observable. He knew he was not walking and standing on a level cement floor. He was using platforms of bags of soda ash stacked in a room. Any laborer would know the general nature of the platforms after making a trip or two to the rear of the room; but as plaintiff worked there he might not observe a small space between two bags. It might also be said that if plaintiff did observe such a space he would not likely regard it as a defect making his work hazardous.

Finding No. 5 appraises the physical situation in terms of care on defendant's part. The defect was not so dangerous that an employer, exercising due care toward his workmen, would not have permitted it to exist. This acquits defendant of negligence, just as the fourth finding acquitted plaintiff of negligence and assumption of risk.

Plaintiff has trouble in understanding the fifth question, and states a meaning which makes the answer say the employer ought to have abated the defect. The question is plain, called for a plain answer, received a plain answer, and there is no ground for contention the jury misunderstood question or answer, especially because the answer is true. The issue was placed before the jury by a concrete instruction:

"It was the duty of the defendant to furnish the plaintiff with a reasonably safe place in which to work when putting the sacks away. If the defendant did not do this, it was guilty of negligence. Under the evidence in this case, the place furnished the plaintiff in which to work was the sacks on which the

plaintiff was required to walk when putting other sacks away, and which had been placed in the storeroom before he commenced to work."

The jury could find nothing wrong with the place except the existing space left by workmen who preceded plaintiff, and that space did not threaten danger to such an extent a careful employer would not have permitted it to exist. The negative statement, "would not have permitted the defect to exist," is, of course, equivalent to a positive statement such as "would have remedied the defect." The finding in the latter form is, the space was not so dangerous that an employer, having proper regard for the safety of his employees, would have closed it. While choice between the two forms of expression is a matter of opinion, the negative form seems to be the more emphatic. The inference that the space was not so dangerous an employer who exercised proper care would not have allowed it to be there, was fully warranted by the evidence.

Plaintiff says the jury found the space was a "latent" defect, the general verdict was that defendant was negligent in not discovering and remedying the defect, and it is immaterial whether it was so dangerous defendant would have fixed it if defendant had known about it. There was nothing in pleading, evidence, or instruction to the jury, about negligence in failure to inspect, discover, and remedy, and the facts cannot be changed by interpolation of the word "latent." The jury was considering a pile of sacks on which plaintiff was obliged to walk. There was a hole in the surface of the pile—a space between two sacks. That made the place where plaintiff was obliged to walk defective, and the question was whether that hole was so dangerous a prudent employer would not have allowed it to exist.

Finally, plaintiff says the hole was dangerous enough to injure plaintiff. In cases arising under the federal employers' liability act the decisions of the supreme court of the United States are controlling. That court has repeatedly said the fact of accident and injury does not establish negligence, and this is true generally. The question is whether the defect causing injury was of such a nature that an employer, in the discharge of his duty to furnish a safe place to work, ought to have foreseen some kind of injury might be occasioned.

If the court were obliged to exercise its own judgment it would hold there was no substantial evidence the railroad company was negligent toward plaintiff; but it is sufficient to approve finding

No. 5. That finding is inconsistent with the general verdict, and the special finding controls.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for defendant on the special findings of fact.